UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Peter L. and Lisa Dahl,
husband and wife,

                Plaintiffs,

v.

Rice County, Minnesota; and Richard
Cook and Carl Rabeneck, each in his
individual and official capacity;
and William Skarupa, in his individual
capacity,

                Defendants.

Civil No. 06-3777 (DWF/AJB)

**MEMORANDUM**
**OPINION AND ORDER**

_____

Richard T. Wylie, Esq., counsel for Plaintiffs.

Jeff M. Zalasky, Esq., Jeffrey A. Egge, Esq., Jon K. Iverson, Esq., Pamela Fisher Whitmore, Esq., Iverson Reuvers, LLC, counsel for Defendants Rice County, Richard Cook, and William Skarupa.

Roger L. Rowlette, Esq., and Jason M. Hill, Esq., Johnson & Lindberg, PA, counsel for Defendant Carl Rabeneck.

_____

      This matter is before the Court on a Motion for Summary Judgment brought by Defendants Rice County, Richard Cook, and William Skarupa, and a separate Motion for Summary Judgment brought by Defendant Carl Rabeneck. For the reasons stated below, the Court grants both motions.

## BACKGROUND

Plaintiff Peter Dahl worked as a Rice County Deputy Sheriff from November 1992 until Fall 2006.  During his employment with Rice County, Dahl was assigned to a multi-jurisdictional SWAT team, served as a firearms instructor, and served on a multi-jurisdictional drug task force.  (Aff. of Jeffrey M. Zalasky ("Zalasky Aff.") ¶ 3, Ex. B (Dep. of Peter Dahl ("Dahl Dep.")) at 18.)

On August 18, 2005, Sheriff Cook e-mailed Dahl to inquire about a purchase of badges that had been charged to Rice County.  The e-mail reads:

> Pete-
>
> I have received notice from accounting at Symbol Arts they are prepared to turn your (our) account over to collections for the amount of $490.
>
> First of all, this expenditure was never authorized by this Office.  Secondly, you are not to charge anything, anywhere to this Office without prior approval.
>
> Lastly, you have dragged us into your mismanaged personal affairs and I am getting real tired of it.
>
> Call David at Symbol [sic] Arts . . . and resolve this now!

(Zalasky Aff. ¶ 7, Ex. F.)

On August 22, 2005, Dahl responded to Sheriff Cook's e-mail as follows:

> Once again another email is directed at me in a hostile and condescending tone.  But since talking with us personally seems to becoming a thing of the past, I will respond accordingly.  I never charged anything to this office, nor to the name of this office.  This was a purchase by members of the task force agents and team.  The order was placed as such and was only shipped here.  I was simply the contact person who ended up having some members sending money through me.  Some of the order was wrong and had to be replaced by this company before those persons were willing to pay.  I have

> relayed this info before and have spoken with this company who did not return my message.
>
> I feel that I should relay to you that the tone of some messages we deputies have been receiving has brought the morale of this department to its proverbial knees. As to ones personal affairs affecting the department, I choose to remain professionally objective before casting stones.
>
> Respectfully,
>
> Pete Dahl

(*Id.*)

On August 22, 2005, Dahl met with Sheriff Richard Cook at Sheriff Cook's request. Sheriff Cook asserts that he requested the meeting to discuss unauthorized charges made by Dahl to Rice County. During this meeting, Dahl asserts that Sheriff Cook stated "who do you think you are, you smart ass little prick?"; that Sheriff Cook struck Dahl in the chest with the heel of his hand; and that the strike caused Dahl to fall backwards into a chair and injure his back. (Dahl Dep. at 49, 55-56; Zalasky Aff. ¶ 13, Ex. L (Dep. of Richard Cook ("Cook Dep.")) at 89.) For the purposes of this motion, Defendants agree that there was an assault and that Dahl was injured.

Also on August 22, 2005, Dahl completed a First Injury Report and an Accident Report. (Zalasky Aff. ¶ 16, Ex. O.) In the Accident Report, Dahl reported that the cause of the incident was that "Sheriff lost his temper." (*Id.*) On August 23, 2005, Dahl reported the incident to the Rice County Administrator, who encouraged Dahl to utilize the Employee Assistance Program. (Zalasky Aff. ¶ 6, Ex. E (Dep. of Gary Weirs ("Weirs Dep.")) at 69.) The Faribault Police Department referred Dahl's complaint to the Lakeville Police Department and the Lakeville City Attorney. The Lakeville City

3

Attorney later informed Dahl they would not prosecute Sheriff Cook for the alleged assault and battery. (Zalasky Aff. ¶¶ 14, 15, Exs. M & N.)

On September 2, 2005, Dahl's doctor wrote a note stating that Dahl was unable to return to work due to a back injury. (Zalasky Aff. ¶ 16, Ex. O.) Dahl went on medical leave. There is no dispute that Dahl was unable to perform his job duties as a deputy sheriff. Dahl, however, asserts that he could have performed "light duty" work. Defendants assert that the Rice County Sheriff's Department does not have light duty work options.

On August 10, 2006, Rice County sent a termination letter to Dahl that reads in part:

> Dear Mr. Dahl:
>
> Rice County has determined, based on medical reports that it has received, that you are medically unfit to perform the duties of a Rice County Deputy Sheriff. Please be advised that the County intends to terminate your employment on this basis, which constitutes incompetence for the purposes of the Veterans Preference Act, effective sixty (60) days from the date of this letter.
>
> Pursuant to Minnesota Statutes, Section 197.46, you have the right to request a hearing concerning your termination before a neutral panel. If you wish to request a hearing, you must do so within sixty (60) days of receipt of this notice. . . .
>
> Failure to request a hearing within sixty (60) days of the receipt of this notice shall constitute a waiver of your right to a hearing.

(Zalasky Aff. ¶ 4, Ex. C.)

Dahl alleges that after he complained about Sheriff Cook, Carl Rabeneck, the Emergency Services Director, began to stalk Dahl and his family, and assaulted Dahl on a

separate occasion. In addition, Dahl asserts that Sheriff Cook and Skarupa, a sergeant in the Rice County Sheriff's Department, defamed Dahl.

Dahl and his wife bring this suit seeking damages for Dahl's physical injuries under 42 U.S.C. § 1983, alleging violations of Dahl's First and Fourteenth Amendment rights and several state-law claims, including assault, battery, intentional infliction of emotional distress, violation of the Minnesota Whistleblower Act, defamation, and loss of consortium.

## DISCUSSION

**I.**     **Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953,

957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.     Federal Claims**

    **A.     *Monell* Claims**

Dahl asserts several federal claims under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Dahl's federal claims are asserted against Rice County and Sheriff Cook in his official and individual capacity.[1] A § 1983 claim against an employee in his official capacity is deemed to be a suit against the employer only, which in this case is Rice County. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). It is well-established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, a government body cannot be held liable under § 1983 merely because it

---

[1]     In his opposition, Dahl clarified his claims and explained that his federal claims are only being asserted against Rice County and Sheriff Cook. (Pls.' Mem. of Law in Opp'n to Mots. for Summ. J. at 2.)

employs a tortfeasor. *Id.* at 691-92. For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id.* at 694. An "[o]fficial policy involves a deliberate choice to follow a course of action . . . made from among various alternatives[] by an official who is determined by state law to have the final authority to establish governmental policy." *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quotations and brackets omitted). Alternatively, a custom "is demonstrated by: (1) [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) [t]he plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.,* proof that the custom was the moving force behind the constitutional violation." *Id.* (brackets omitted).

Viewing the evidence in the light most favorable to Dahl, the Court finds that Dahl has failed to identify a genuine issue of fact that would support a *Monell* claim. Although there is evidence that certain employees found Sheriff Cook unpleasant, "sarcastic," "aggressive," and even "abusive," the evidence submitted demonstrates that such complaints related to alleged verbal abuse and his general disposition. There is no evidence in the record suggesting that Sheriff Cook or Rice County maintains a widespread policy or custom of physical abuse or corporal punishment. For example, there is no evidence that Sheriff Cook assaulted any other employees or that Rice County

received any complaints that Sheriff Cook physically assaulted or physically disciplined other department employees.

Dahl asserts that because Sheriff Cook is a "policy maker," his decision to assault Dahl constitutes a policy, practice, and decision of Rice County. Dahl alleges that Sheriff Cook has final authority over who he hires and discharges, as well as on disciplinary matters short of discharge. Dahl further asserts that Sheriff Cook's decision to assault Dahl was a form of discipline and therefore a decision of Rice County.

Even in the absence of an official policy or custom, a policy could be inferred from a single decision taken by the highest officials responsible for setting policy. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Section 1983 liability may attach to a municipality "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). However, on the record before the Court, there is simply no evidence that this single, isolated incident represents a policy of Sheriff Cook's or Rice County's. While Sheriff Cook may have engaged in unlawful tortious activity during his meeting with Dahl, the record demonstrates that this assault was the result of Sheriff Cook losing his temper. It cannot be fairly said that Sheriff Cook's act of assaulting Dahl was meant to represent official policy. *See Penbar*, 475 U.S. at 483 (holding that municipal liability under § 1983 only attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official responsible for establishing final policy").

Dahl also asserts that municipal liability exists because other elected Rice County officials ratified Sheriff Cook's behavior by expressing support for Sheriff Cook, representing that Dahl's allegations were baseless, and failing to meaningfully investigate Sheriff Cook's conduct. The Court concludes that Dahl has failed to provide factual or legal support for this theory of liability in this case.

For the above reasons, Dahl's federal claims against Rice County and Sheriff Cook in his official capacity fail. To the extent that Dahl's federal claims are asserted against Sheriff Cook in his individual capacity, the Court examines the substance of those claims below.

### 2. First Amendment Retaliation

Dahl asserts that Sheriff Cook's assault on August 22, 2005, is actionable as retaliation for protected speech under the First Amendment. Specifically, Dahl contends that the assault was in response to Dahl's e-mail, in which he claims to have implicated several issues of public concern, including overall morale in the department. Dahl asserts his First Amendment Retaliation claim against Rice County and Sheriff Cook.

"'In order to establish a claim for unlawful First Amendment retaliation, a public employee must show that [he] suffered an adverse employment action that was causally connected to [his] participation in a protected activity.'" *Meyers v. Starke*, 420 F.3d 738, 744 (8th Cir. 2005) (quoting *Duffy v. McPhillips*, 276 F.3d 988, 991 (8th Cir. 2002)). Specifically, a plaintiff must show: that (1) he engaged in a protected activity, (2) the government official took adverse action that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated by the exercise

9

of the protected activity.  *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).   The inquiry into the protected status of speech is one of law, not fact.  *Connick v. Myers*, 461 U.S. 138, 147 n.7, 150 n.10 (1983).

To demonstrate that he engaged in a protected activity, Dahl must first show that his allegedly protected statement was made as a citizen on a matter of public concern.  *See Garcetti v. Ceballos*,  547 U.S. 410, 418 (2006).  If Dahl cannot make this threshold showing, he has no First Amendment cause of action.  *Id.*; *see also Connick*, 461 U.S. at 146).[2]  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Connick*, 461 U.S. at 147-48.  Speech involves a matter of public concern when it relates to a matter of political, social, or other community concern.  *Connick*, 461 U.S. at 146.

Here, the Court finds that Dahl's statements regarding department morale do not address a matter of public concern.  Instead, his statements were closely tied to a personal employment dispute that he had with Sheriff Cook, specifically the issue of Dahl's alleged unauthorized purchases.  Dahl's statement was made privately in a personal e-mail[3] in direct response to an e-mail received from Sheriff Cook, in which Sheriff Cook

---

[2]   Once a public employee makes that threshold showing, the employee's interest in speaking on such matters is balanced against the interest of the States in promoting the efficiency of public services.  *Stever v. Indep. Sch. Dist. No. 625, St. Paul*, 943 F.2d 845, 850 (8th Cir. 1991).

[3]   The Court recognizes that the fact that Dahl expressed his views in Sheriff Cook's office on a matter related to his job is not dispositive as to First Amendment protection.
(Footnote Continued On Previous Page)

criticized Dahl's actions in purchasing badges.  There is no evidence that Dahl, prior to the assault, attempted to inform the public about low department morale.  Moreover, his statements regarding morale only conveyed his view, and presumably the views of other unnamed deputies, that morale was low due to "the tone" of certain messages being received by Sheriff Cook.  This statement, given its context in response to Sheriff Cook's prior e-mail and in light of the record as a whole, was not made to evaluate the performance of the department, but instead reflects Dahl's displeasure with Sheriff Cook's treatment of him as an employee.  *See Connick*, 461 U.S. at 148 n.8 (explaining that a questionnaire that pertained in part to the level of office morale is not of "public concern" simply because its subject matter could have been a topic of a communication to the public that might be of general interest"); *see also Allen v. City of Pocahontas*, 340 F.3d 551, 557 (8th Cir. 2003) (noting that unless an employee is speaking as a concerned citizen, the speech is not protected).

  Because Dahl's statements do not implicate a matter of public concern, First Amendment protection does not apply and Dahl's retaliation claim fails.

---

(Footnote Continued on Next Page)
*See Garcetti*, 547 U.S. at 420.  However, as explained above, Dahl's statement was also clearly tied to a work-related dispute he had with Sheriff Cook and was not made to benefit the public.

### 3. Procedural Due Process

Dahl alleges that Defendants deprived him of his protected property interest in his employment and his protected liberty interest in bodily integrity without first being afforded due process. Specifically, Dahl asserts that he should have been afforded a meaningful opportunity to be heard before Sheriff Cook assaulted him.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333.

Dahl asserts that he was entitled to pre-deprivation process, in particular a pre-deprivation hearing, before he was assaulted by Sheriff Cook. Dahl asserts that Sheriff Cook intended to discipline Dahl when he called him into his office and that Dahl was entitled to a "chance to express himself before Cook levied his punishment." (Pls.' Mem. of Law in Opp'n to Mots. for Summ. J. at 23.) After reviewing the parties' submissions, it is clear that Dahl's procedural due process claim is based on Sheriff Cook's alleged assault.[4]

---

[4]  Dahl also summarily asserts that Sheriff Cook withdrew Dahl's duties, blacklisted Dahl, terminated his employment, and denied Dahl light-duty employment without due process. Dahl offers no evidence to support a due process violation with respect to the change of his duties, his assertion of blacklisting, or the denial of "light duty" employment. To the extent that Dahl asserts that he was deprived of due process before being terminated, his claim also fails. The record establishes that Dahl had ample opportunity to be heard with respect to his discharge. Specifically, but not exclusively,

(Footnote Continued On Previous Page)

Here, the record reveals that Sheriff Cook's alleged assault was a random, unauthorized act that occurred in the heat of the moment.  In addition, Sheriff Cook's actions likely violate state tort law.  By its very nature, Sheriff Cook's assaultive and possibly tortious conduct would make it impossible for Rice County to provide a pre-deprivation hearing.  There is no evidence that the assault occurred pursuant to a county procedure, and it is illogical to conclude that the county could predict or anticipate in advance when such an assault might occur.  *See Parratt v. Taylor*, 451 U.S. 527, 541 (1981) (reasoning that where a loss of property is occasioned by a random, unauthorized act, rather than state procedure, the state cannot predict when loss will occur), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).[5]  Further, Dahl is not able to demonstrate inadequacy of post-deprivation remedies.  Therefore, Dahl's procedural due process claim fails.

### 4. Substantive Due Process

Dahl asserts that Sheriff Cook's assault, while the Sheriff knew that Dahl had a previous back injury, constitutes a substantive due process violation.  In order to prevail on his substantive due process claim, Dahl must show, "that the government action was truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of

---

(Footnote Continued on Next Page)
Dahl was given the opportunity to request a hearing within 60 days of the receipt of his August 2006 termination letter.  (Zalasky Aff. ¶ 4, Ex. C.)  Dahl did not request a hearing.

[5]     The *Parratt* rule also applies to due process claims based on an alleged deprivation of liberty interests.  *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990).

state law." *Graning*, 172 F.3d at 617 (*quoting Anderson v. Douglas County*, 4 F.3d 574, 577 (8th Cir. 1993)).  The government action in question must shock the conscience or be otherwise offensive to judicial notions of fairness and human dignity.  *See Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 921 (8th Cir. 2001).  Viewing the evidence in the light most favorable to Dahl, the Court concludes that no reasonable juror could conclude that Sheriff Cook's assault, which consisted of a single strike to the chest and resulted in Dahl being pushed backwards into a chair, is sufficiently shocking so as to constitute a substantive due process violation.  Accordingly, Dahl's substantive due process claim fails.

        **5.**        **Equal Protection**

Dahl asserts that he was denied equal protection of the laws because another employee was given a largely sedentary job while Dahl was not given "light duty" work.  A party claiming an equal protection violation that involves neither a suspect class nor a fundamental right must prove that he "was treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective." *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006).  In order to demonstrate this, Dahl must prove "similarity to other individuals or entities receiving favorable treatment." *Id*.

Dahl concedes that Defendants have established that the Rice County Sheriff's Department has a "more or less official 'no light duty work' policy." (Pls.' Mem. of Law in Opp'n to Mots. for Summ. J. at 27.)  However, Dahl contends that after he was injured, a largely sedentary job opened up and was filled by another licensed deputy.  However,

14

the evidence submitted by Dahl falls far short of establishing a question of fact on his equal protection claim. In particular, while Dahl offers vague assertions that he was treated differently because he was not offered light duty work, he fails to submit evidence suggesting that those people he claims to have been treated more favorably than he were similarly-situated. Without such a showing, Dahl's equal protection claim cannot survive.[6]

### III.   State-law Claims

In addition to his § 1983 claims, Dahl also asserts several state-law claims, including assault and battery against Sheriff Cook and Rice County, assault and intentional infliction of emotional distress against Rabeneck and Rice County, Whistleblower retaliation against Rice County, and defamation against Sheriff Cook, Skarupa, and Rabeneck. The basis for the Court's jurisdiction over these claims is 28 U.S.C. § 1367(a). Section 1367(a) permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the district court's original jurisdiction. A district court may, in its discretion, decline to exercise supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3). Most often, when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, courts dismiss the remaining state-law claims without prejudice in order to

---

[6]   Sheriff Cook is also entitled to qualified immunity on Dahl's constitutional claims because Sheriff Cook's conduct did not violate any clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

avoid making needless decisions of state law, as a matter of comity, and to promote justice between the parties. *Ivy v. Kimbrough*, 115 F.3d 550, 552-53 (8th Cir. 1997). The Court declines to exercise jurisdiction over Dahl's remaining state-law claims. The Court, therefore, dismisses these claims without prejudice so that they may be heard by a Minnesota state court.

The Court believes that it would be in the best interest of the parties to resolve this matter without the expense of further litigation. Although the Court is dismissing Dahl's claims, the state-law claims are dismissed without prejudice. Therefore, the Court suggests that the parties consider utilizing the services of the Magistrate Judge to negotiate a settlement. If the parties are interested, they may contact Kathy Thobe, Calendar Clerk to Magistrate Judge Arthur J. Boylan, at 651-848-1210.

## CONCLUSION

1. Defendants' Motion for Summary Judgment (Doc. No. 53) is **GRANTED IN PART** consistent with this Order.

2. Rabeneck's Motion for Summary Judgment (Doc. No. 60) is **GRANTED IN PART** consistent with this Order

3. Counts I, II, III, and IX, of Dahl's Amended Complaint (Doc. No. 14) are **DISMISSED WITH PREJUDICE**.

    4.    Counts IV, V, VI, VII, and VIII, of Dahl's Amended Complaint (Doc. No. 14) are **DISMISSED WITHOUT PREJUDICE**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 23, 2008        <u>s/Donovan W. Frank</u>
                                          DONOVAN W. FRANK
                                          Judge of United States District Court